2004 OK 7

**Lula FANNING, as Guardian of Eva Jackson, a physically and mentally incapacitated adult, Plaintiff/Appellant,**

**v.**

**James BROWN, Alex Dout, Grant Rhodes, Tony Wilkins, and Jeff Young, Defendants/Appellees.**

No. 97,956.

Supreme Court of Oklahoma.

Feb. 10, 2004.

Nancy Lloyd, Jim Lloyd, Lloyd & Lloyd, Sand Springs, OK, for plaintiff/appellant, Lula Fanning, as Guardian of Eva Jackson.

James E. Frasier, George M. Miles, Frasier, Frasier & Hickman, LLP, Tulsa, OK, for defendants/appellees, James Brown; Alex Dout; Grant Rhodes; Tony Wilkins; and Jeff Young.

BOUDREAU, J.

¶ 1 Lula Fanning, as Guardian of Eva Jackson, a physically and mentally incapacitated adult (Fanning), filed a petition in district court against James Brown, Alex Dout, Grant Rhodes, Tony Wilkins, and Jeff Young (defendants) who are the shareholders of Sand Springs Care Center, Inc. (SSCC).[1]

---

1. Fanning's petition also named the following defendants: Sand Springs Care Center, Inc., d/b/a Oak Dale Manor; TLC Health Care, Inc., d/b/a Crescent Health Services; Rocky R. Lemon; H.A. Sand Springs, LLC, formerly known as H.A. Nevada Associates, LLC; Harvey Angell;

Fanning's petition alleged SSCC owned and operated Oak Dale Manor, a specialized long-term nursing care facility in Sand Springs, Oklahoma. Fanning asserts nursing home negligence, statutory violations of the Oklahoma Nursing Home Care Act (NHCA), 63 O.S.2001, § 1–1901 et seq.[2] and the Protective Services for Vulnerable Adults Act, 43A O.S. 2001, § 10–101 et seq.,[3] and breach of contract for injuries Eva Jackson received while a resident at Oak Dale Manor.

¶ 2 Defendants filed a motion to dismiss on May 21, 2002, in which they asserted that Fanning failed to state a claim upon which relief could be granted. Defendants' motion provided that "[a]n individual and a corporation are two separate and distinct legal entities. An individual stockholder cannot be liable for the negligent acts of the corporation." On June 5, 2002, Fanning filed an amended petition adding a fourth cause of action to pierce the corporate veil. On June 6, 2002, Fanning filed a response to the motion to dismiss. In her response, Fanning maintained the NHCA expressly authorizes a direct action against "owners" and that there must be a factual determination as to whether defendants satisfy the definition of "owner" under the act. Fanning further argued that the equitable doctrine of piercing the corporate veil should be invoked to protect the rights of third persons and accomplish justice.

¶ 3 The trial judge granted defendants' motion to dismiss and Fanning appealed. The Court of Civil Appeals, Division I (COCA), affirmed, finding the petition failed to state a claim against the defendant shareholders. In making this determination, COCA found the NHCA contemplates that either a person or an entity will own a facility that there can be only one "owner" under the act. As a result, SSCC alone, and not its

individual shareholders, own Oak Dale Manor and is subject to liability under the act. In addition, COCA held that Fanning failed to allege sufficient facts to justify the court disregarding the corporate entity and imputing liability for the acts of the corporation to the shareholders. This Court granted certiorari.

## I. STANDARD FOR REVIEWING A MOTION TO DISMISS

■ ¶ 4 The standard of review for an order dismissing a case for failure to state a claim upon which relief can be granted is de novo and involves consideration of whether a plaintiff's petition is legally sufficient. Hayes v. Eateries, Inc., 1995 OK 108, ¶ 2, 905 P.2d 778, 780. When reviewing a motion to dismiss, the court must take as true all of the challenged pleading's allegations together with all reasonable inferences which may be drawn from them. Hayes, 905 P.2d at 780. "A pleading must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle him to relief." Frazier v. Bryan Mem. Hosp., 1989 OK 73, ¶ 13, 775 P.2d 281, 287. (emphasis in original). Furthermore, the burden to show the legal insufficiency of the petition is on the party moving for dismissal and a motion made under 12 O.S.2001, § 2012(B)(6) must separately state each omission or defect in the petition; if it does not, the motion shall be denied without a hearing. Indiana Nat.'l Bank v. State of Oklahoma, Dept. of Human Serv., 1994 OK 98, ¶ 3, 880 P.2d 371, 375. Motions to dismiss are usually viewed with disfavor under this liberal standard. Id. at 375. The burden of demonstrating a petition's insufficien-

Kenneth Dorsey, Court Appointed Receiver; Philip O. Watts, Receiver; Rex Hodges, Receiver; RHM Co., and Mid America Health Care Management Inc., all d/b/a Oak Dale Manor. Fanning dismissed without prejudice all claims against these defendants.

2. Unless otherwise noted, the applicable sections of the NHCA have not been amended since the 2001 codification.

3. In her brief-in-chief, Fanning mentions under the Concise Statement of Facts and Arguments that she sued the defendant shareholders alleging a claim under the Protective Services for the Elderly and for Incapacitated Adults Act without any further argument. This claim is not supported by any argument or legal authority and is deemed abandoned. See Hadnot v. Shaw, 1992 OK 21, ¶ 7, 826 P.2d 978, 981; Wetsel v. Independent Sch. District I–1, 1983 OK 85, ¶ 8, 670 P.2d 986, 991.

cy is not a light one. *Id.* The above standards guide our review in this case.

## II. DISCUSSION

### A. The Petition Fails to State a Claim Under the Oklahoma Nursing Home Care Act, 63 O.S.2001, § 1–1901 *et seq.*

¶ 5 The NHCA provides a private right of action for nursing home residents to redress a violation of rights conferred by the act. *Morgan v. Galilean Health Enter., Inc.,* 1998 OK 130, ¶ 8, 977 P.2d 357, 361. Every nursing home resident has "the right to receive adequate and appropriate medical care consistent with established and recognized medical practice standards within the community." 63 O.S.Supp.2003, § 1–1918. This right is enforceable against "[t]he owner and licensee [who] are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident." 63 O.S.Supp.2003, § 1–1939(A).[4]

¶ 6 The NHCA defines "owner" as "[a] person, corporation, partnership, association, or other entity which owns a facility or leases a facility." 63 O.S.2001, § 1–1902(16). It also provides that "[t]he person or entity that stands to profit or lose as a result of the financial success or failure of the operation shall be presumed to be the owner of the facility." *Id.*[5] Fanning maintains the NHCA authorizes her to bring an action against the shareholders as "owners" because they stand to profit or lose as a result of the financial success or failure of the operations of Oak Dale Manor.

¶ 7 Defendants filed a motion to dismiss asserting that the corporation was an entity distinct from its individual members or shareholders. The trial court granted defendants' motion to dismiss without comment. On appeal, COCA rejected Fanning's argument that the shareholders were "owners" under the NHCA. COCA interpreted "owner" as either the person or entity that stands to profit or lose—that there can be only one "owner" under the act. As a result, COCA found that SSCC alone, and not its individual shareholders, is subject to liability within the meaning of the act.

¶ 8 At issue is the interpretation or construction of the definition of "owner". 63 O.S.2001, § 1–1902(16). Statutory construction presents a question of law. *Arrow Tool & Gauge v. Mead,* 2000 OK 86, ¶ 20, 16 P.3d 1120, 1122–23. Questions of law are reviewed by a *de novo* standard. *Neil Acquisition v. Wingrod Investment Corp.,* 1996 OK 125, ¶ 5, 932 P.2d 1100, 1103. Under this standard, we have plenary, independent and nondeferential authority to determine whether the trial court erred in its legal ruling. *Id.*

¶ 9 This Court has stated that the language of the NHCA "is not a model of clarity and precision". *Morgan,* 977 P.2d at 361. The definition of "owner" exemplifies this statement. The first sentence which defines "owner" as the person or entity which owns or leases a facility is relatively unambiguous.[6] The second sentence, however, is ambiguous as it could include other persons or entities which profit incidentally from the facility's operation.

¶ 10 Rules of statutory construction are employed when legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity. *Johnson v. City of Woodward,* 2001 OK 85, ¶ 6, 38 P.3d 218, 222. The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute. *The Pentagon Academy v. Independent Sch. Dist. No. 1 of Tulsa County,* 2003 OK 98, ¶ 19, 82 P.3d 587. Courts will give the words

---

4. The NHCA defines "licensee" as "the person, a corporation, partnership, or association who is the owner of the facility which is licensed by the Department pursuant to the provisions of the Nursing Home Care Act." 63 O.S.2001, § 1–1902(13). In this case, Fanning alleges SSCC is the "owner".

5. The definition of "owner" and "licensee", taken literally, are somewhat inconsistent. For example, "licensee" is defined as "the owner of the facility" whereas the "owner" may either "own" or "lease" a facility.

6. *Price v. TLC Health Care, Inc.,* 2004 OK 8, adopted contemporaneously with the case at issue.

of a statute a plain and ordinary meaning, unless it is clear from the statute that a different meaning was intended by the Legislature. *Id.*

■■■ ¶ 11 Guided by these rules of construction, we look to the language of a statute to ascertain legislative intent. The NHCA defines "owner" as a person or entity which owns or leases a facility. 63 O.S.2001, § 1–1902(16). Since the Legislature tied the definition of "owner" to "facility", we must examine other provisions of the NHCA more closely. "Facility" is defined as a nursing facility and a specialized home. 63 O.S.2001, § 1–1902(9). "Nursing Facility" means a home or institution which is primarily engaged in providing nursing care, rehabilitation services or health-related care and "specialized home" means any home or institution which provides inpatient long-term care services. 63 O.S.2001, § 1–1902(10 & 11).

¶ 12 Upon reviewing these provisions it is clear that the NHCA defines "facility" by reference to the nature and extent of services it provides to residents. Accordingly, as the definition of "owner" is defined by reference to "facility", the "owner" of a "facility" is a person or entity that has responsibility for providing the relevant services to residents.[7]

■■■ ¶ 13 In our view, the "profit or lose" language in the second sentence does not extend liability beyond the specific person or entity which has responsibility for providing the relevant services. We believe the Legislature intended the language to be construed narrowly so that it would not extend liability to other persons and entities which have some sort of legal interest in the facility but are not the "owner". These other persons or entities, like shareholders of a corporation, remain entitled to the protections otherwise available to the particular business form they have chosen.

¶ 14 A broad interpretation of the "profit or lose" language in the definition of "owner" would allow the joinder of defendants clearly never intended by the Legislature. We can

imagine a variety of persons or entities that would "stand to profit or lose as a result of the financial success or failure of the operation." For instance, landlords, vendors, and even employees of the facility themselves, all could be said to have economic interests in the financial success of the nursing facility. It can not be seriously argued that anyone with an economic interest in the success or failure of the facility should be a defendant in a malpractice action.

¶ 15 In sum, it is alleged that SSCC, as a corporation, owned and operated Oak Dale Manor. Although the defendant shareholders can be said to have profited incidentally from the facility's operations, they are not "owners" under the NHCA. We agree that Fanning's petition failed to state a claim upon which relief could be granted. We hold the trial court was correct in sustaining defendants' motion to dismiss.

## B. The Petition Adequately States a Claim to Disregard the Corporate Veil.

■■■ ¶ 16 Generally, a corporation is regarded as a legal entity, separate and distinct from the individuals comprising it. *Buckner v. Dillard*, 1939 OK 144, ¶ 21, 89 P.2d 326, 328. However, the notion of a corporation's legal entity, apart from the persons composing it, is introduced for convenience and to serve the ends of justice. *Mid–Continent Life Ins. Co. v. Goforth*, 1943 OK 244, ¶ 10, 143 P.2d 154, 156. Accordingly, Oklahoma has long recognized the doctrine of disregarding the corporate entity in certain circumstances. Courts may disregard the corporate entity and hold stockholders personally liable for corporate obligations or corporate conduct under the legal doctrines of fraud, alter ego and when necessary to protect the rights of third persons and accomplish justice. *See Goforth*, 143 P.2d at 156 (courts may disregarded the legal fiction that bestows on a corporation an existence separate and distinct from its stockholders

---

7. *See* Edward J. Main, *Who Owns a Nursing Facility?*, 75 Okla.B.J. 111 (Jan. 17, 2004), a recent Oklahoma Bar Journal article which addressed the ambiguity contained in the definition of "owner" under the NHCA. He argues that an interpretation that ties the definition of "owner" to the provision of the relevant service is consistent with the general principle of "duty" that a person must be in a position to act or to fail to act in a way that will injure another.

when necessary to protect the interests of the public, circumvent fraud and protect the rights of third persons or accomplish justice); *Frazier v. Bryan Memorial Hosp. Authority,* 1989 OK 73, ¶ 16, 775 P.2d 281, 288 (if one corporation is simply the instrumentality of another corporation, the separation between the two may be disregarded and treated as one).

¶ 17 Fanning filed an amended petition asserting a legal theory seeking to pierce the corporate veil and hold SSCC shareholders individually liable for the obligations and conduct of SSCC. Fanning alleged the shareholders used the corporate entity to defeat the public policy of protecting a resident from neglect and abuse, that they failed to secure and maintain liability insurance, and that they allowed SSCC to become suspended from doing business within the state. She also argued that the public policy of protecting elderly residents is a compelling or overriding reason to disregard the corporate entity and pierce the corporate veil.

¶ 18 Shareholders moved to dismiss simply stating the general rule that a shareholder is a separate entity that cannot be liable for the negligent acts of the corporation.[8] The trial court dismissed the case and COCA affirmed. In affirming, COCA held that Fanning failed to allege sufficient facts to state a claim that would justify the court disregarding the corporate entity and imputing liability for the acts of the corporation to the shareholders.

¶ 19 Oklahoma became a notice pleading state with the adoption of the Oklahoma Pleading Code in 1984. 12 O.S.2001, § 2008. The Pleading Code does not require a plaintiff to set out in detail the facts upon which the claim is based but merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief; and ... [a] demand for judgment for the relief to which he deems himself entitled." 12 O.S.2001, § 2008(A)(1) & (2). This requirement is not onerous, but is merely to give an opposing party fair notice of the claim and the grounds upon which it rests. *Gunn v. Consolidated Rural Water & Sewer Dist., No. 1, Jefferson County, Oklahoma,* 1992 OK 131, ¶ 13, 839 P.2d 1345, 1351.

¶ 20 The United States Supreme Court reaffirmed the liberal system of "notice pleading" in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit et al,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).[9] In *Leatherman,* homeowners filed a complaint which alleged that searches of their home violated the Fourth Amendment and that municipal corporations failed to adequately train officers. The trial court dismissed the complaint finding the plaintiffs had failed to meet the heightened pleading standard required in a civil rights suit alleging municipal liability under 42 U.S.C. § 1983. The Fifth Circuit affirmed. In reversing, the United States Supreme Court stated: "[t]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the

---

8. Amicus curiae and the defendants argue that pursuant to 18 O.S.2001, § 1124(B) Fanning is required to obtain a judgment against the corporation which must be returned unsatisfied before the plaintiff may bring suit against the shareholders for a corporate debt. This is a defense presented for the first time on appeal. Without deciding its application, we disagree. Subsection (B) of § 1124 must be read in relation to subsection (A). Subsection (A) provides that subsection (B) applies only to claims conferred "by the provisions of the Oklahoma General Corporation Act" which permits officers, directors, and shareholders to be held liable for the debts of the corporation in certain instances. *See Lone Star Indus., Inc. v. Redwine,* 757 F.2d 1544, 1553 (5th Cir.1985)(interpreting an identical section of the Delaware General Corporation Laws).

9. Since 12 O.S.2001, § 2008 is adopted from its federal counterpart, Rule 8 of the Federal Rules of Civil Procedure, we may look to federal case law to aid in its interpretation and application. *See Heffron v. District Court Oklahoma County,* 2003 OK 75, ¶¶ 13 & 14, 77 P.3d 1069, 1076 (when a statute is adopted from the Federal Rules of Civil Procedure, courts may look to relevant federal case law to assist them in interpreting the pertinent state provision); *State ex rel. Moshe Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 2, 61 P.3d 234, 240 (in that 12 O.S.2001, § 2011 is adopted from its federal counterpart, Rule 11, we may look to federal case law to aid in its interpretation and application).

grounds upon which it rests." *Leatherman,* 507 U.S. at 168, 113 S.Ct. 1160, quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

¶ 21 Title 12 O.S.2001, § 2009(B) does impose a particularity requirement in some instances. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.[10] Since this case does not involve fraud or mistake, Fanning was only required to set forth a short and plain statement of her claims so that the defendants would have fair notice of what Fanning's claims were and the grounds upon which they rest. As the Supreme Court pointed out in *Leatherman,* in the absence of an amendment to Rule 9, federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims. *Leatherman,* 507 U.S. at 168–69, 113 S.Ct. 1160.

¶ 22 In her petition, Fanning has asserted legal theories of negligence and breach of contract. Fanning seeks to pierce the corporate veil of SSCC and hold the individual shareholders liable for the obligations and conduct of the facility. Fanning has given the defendants fair notice of her claims and the grounds upon which they rest. Whether Fanning can prevail on her claim against the shareholders remains to be seen. However, Fanning must be afforded an opportunity to complete discovery so that the court will have a fully developed factual record to determine the issue. At this stage of the proceedings it does not appear beyond a doubt that Fanning can prove no set of facts in support of her theories of recovery. Accordingly, the trial court erred in dismissing Fanning's petition.

¶ 23 Even if the allegations in Fanning's petition were not sufficient to withstand a motion to dismiss, the trial court still erred in dismissing the case without providing Fanning with an opportunity to amend her complaint. Title 12 O.S.2001, § 2012(G) provides "(o)n granting a motion to dismiss a claim for relief, the court shall grant leave to amend if the defect can be remedied and shall specify the time within which an amended pleading shall be filed." This Court has interpreted the statute as a mandatory duty placed on trial courts, as long as the defect can be remedied. *See Kelly v. Abbott,* 1989 OK 124, ¶ 6, 781 P.2d 1188, 1190. In order for the courts to dismiss a claim for failure to state a cause of action without giving the plaintiff the opportunity to amend, it must appear that the claim does not exist rather than the claim has been defectively stated. *See Lockhart v. Loosen,* 1997 OK 103, ¶ 5, 943 P.2d 1074, 1078 (which draws a distinction between a petition that is dismissible for want of a cognizable legal theory of liability and one that is dismissible for insufficient facts under a recognized theory).

¶ 24 The journal entry of judgment in this case merely provides that the court "[h]ereby sustains these Defendants' Motion to Dismiss, pursuant to 12 Okla.Stat. § 2012(B)(6)." The judgment does not provide Fanning with leave to amend. Similarly, since Fanning pled a cognizable legal theory, i.e., piercing the corporate veil, the judgment does not contain a statement that no amendment of the petition could cure the defects in Fanning's petition. If the trial court was of the opinion that the claim was defectively pled, it should have provided Fanning with an opportunity to amend. Accordingly, the trial court erred in dismissing Fanning's petition.

### III. CONCLUSION

¶ 25 In conclusion, we hold the trial court was correct in granting the defendant shareholders' motion to dismiss for failure to state a claim under the Oklahoma Nursing Home Care Act. However, the trial court erred in dismissing Fanning's remaining theories of recovery as her petition adequately states a claim to disregard the corporate veil.

**COURT OF CIVIL APPEALS, DIVISION I, OPINION VACATED; TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART AND CAUSE RE-**

---

10. Although allegations of fraud must be stated with sufficient particularity to enable the opposing party to prepare his or her responsive pleadings and defenses, particularity does not mean the plaintiff has to plead detailed evidentiary matters. *A–Plus Janitorial & Carpet Cleaning v. The Employers' Workers' Compensation Assoc.,* 1997 OK 37, ¶ 35, 936 P.2d 916, 930–31.

MANDED FOR FURTHER PROCEED-
INGS.

ALL JUSTICES CONCUR.