2004 OK 8

**Bill PRICE as Personal Representative of the Estate of Jewel Martin, Plaintiff–Cross Claimant/Appellant,**

v.

**TLC HEALTH CARE, INC. d/b/a Oak Dale Manor, Defendant and Third Party Plaintiff,**

and

**Rocky R. Lemon, Defendant,**

**H.A. Sand Springs, LLC, Defendant/Appellee,**

**Harvey Angell, Defendant/Appellee,**

**Janet Nibarger; and Julie Clemmer, RN, Defendants,**

v.

**Good Shepherd Hospice, L.L.C., Third Party Defendant and Cross Defendant.**

No. 98,091.

Supreme Court of Oklahoma.

Feb. 10, 2004.

Mark A. Cox, Jerri K. Bird, Norman & Edem, Oklahoma City, OK, for Appellant.

Stephanie Reaugh, Joseph H. Bocock, John D. Stiner, McAfee & Taft, Oklahoma City, OK, for Appellees H.A. Sand Springs Health Care, Inc. and Harvey Angell.

HODGES, J.

¶ 1 This is an action for injuries alleged to have been caused through substandard medical care provided at the Oak Dale Manor Nursing Home which is operated by TLC Health Care, Inc. (TLC). The action was brought by the personal representative of the estate of Jewel Martin, deceased, who was a patient at the facility.

¶ 2 The trial court granted summary judgment to two defendants, H.A. Sand Springs, LLC (HASS) and its sole member and manager Harvey Angell [1] who leased the nursing home premises to TLC. The Court of Civil Appeals affirmed in part, reversed in part, and remanded the case for further proceedings. This Court granted certiorari review and now vacates the opinion of the Court of Civil Appeals and affirms the summary judgment of the trial court.

1. Angell died after the judgment was entered. The action has been revived against Richard Angell, executor of the estate of Harvey Angell.

■ ¶ 3 At issue is whether HASS, the landlord, and Angell, its manager, are legally responsible for any negligent or substandard medical care provided to a resident of the nursing home. The question presents an issue of law reviewed *de novo*. *See Kluver v. Weatherford Hosp. Auth.*, 859 P.2d 1081, 1084 (Okla.1993).

HASS IS A MERE LANDLORD WHO INCURS NO LIABILITY UNDER THE NURSING HOME CARE ACT OR THE COMMON LAW DOCTRINE OF *RE-SPONDEAT SUPERIOR* FOR SUB-STANDARD CARE PROVIDED BY ITS NURSING HOME TENANT.

¶ 4 Under a 1999 lease agreement, HASS provided a "turn key" lease of a fully operational, 213 bed facility licensed and operated by TLC. The lease provides that TLC must pay all costs, expenses, and obligations related to the leased premises. HASS is not required to provide any service or do any act related to the premises. TLC is required to maintain property, casualty, and business interruption insurance along with workers' compensation and medical malpractice insurance with HASS as a named insured under each of these policies. HASS receives a monthly rent payment for lease of the premises. In addition, HASS retained the right to inspect the operation, and to inspect and audit its business records.

■ ¶ 5 Oklahoma's Nursing Home Care Act (Act), Okla. Stat. tit. 63, § § 1–1901 through 1–1971 (2001 & Supp.2002), "provides a right of action for residents of nursing homes to redress specific wrongful acts and omissions. It provides for the recovery of damages." *Morgan v. Galilean Health Enters., Inc.*, 1998 OK 130, 977 P.2d 357, 361 n. 13. The Act gives every nursing home resident "the right to receive adequate and appropriate medical care consistent with established and recognized medical practice standards within the community." Okla Stat. tit. 63, § 1–1918. This right is enforceable against "[t]he owner and licensee [who] are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident." *Id.* at § 1–1939(A).

¶ 6 The Act defines "licensee" as "the person, a corporation, partnership, or association who is the owner of the facility which is licensed by the Department [of Health] pursuant to the provisions of the Nursing Home Care Act." *Id.* at § 1–1902(13). "Owner means a person, corporation, partnership, association, or other entity which owns a facility or leases a facility. The person or entity that stands to profit or lose as a result of the financial success or failure of the operation shall be presumed to be the owner of the facility." *Id.* § 1–1902(16).

¶ 7 As this Court has observed, "the language of the Act is not a model of clarity and precision." *Morgan*, 977 P.2d at 361. Its definition of "owner" exemplifies that description. The first sentence which defines "owner" as the entity which owns or leases a facility is relatively unambiguous. The presumption provided in the second sentence, however, could include vendors or others who profit incidentally from the facility's operation. That this could have been the Legislature's intent is unlikely. Resolution of the precise meaning of "owner," [2] however, is not necessary to the determination of the liability of HASS and Angell under the Act.[3]

■ ¶ 8 The liability of an owner or licensee under the Act is premised upon an "intentional or negligent act or omission of their

**2.** The term "owner" in the Act is discussed in *Fanning v. Brown*, 2004 OK 7, decided today.

**3.** The Court of Civil Appeals concluded that HASS was an "owner" under the Act based upon the lease agreement which in its view provided HASS with "substantial control over the operation" of the nursing home. It based this conclusion primarily on the fact that the lease agreement required the operator to cover the landlord as a named insured under its malpractice policy. That court then applied a "balancing test" to determine whether "various public policy considerations," such as the fact that nursing homes are highly regulated by the State, protected residents from "the conduct of the defendant landlord." It concluded that, as a matter of law, HASS had a duty to protect residents from the medical malpractice of the operator.

The two primary flaws in the analysis are (1) the lease provided the landlord *no* control over the care provided to residents, and (2) no "balancing test" was applicable because the Act provided the rule of *respondeat superior* to address injury to or substandard care of nursing home residents.

agents or employees which injures the resident." Okla. Stat. tit 63, § 1–1939(A). This provision is a special rule of the common law doctrine of *respondeat superior*. Under that doctrine, responsibility for an agent's injury to third parties is placed on the party that hires, directs, and controls the agent. *See Texaco, Inc. v. Layton*, 395 P.2d 393, 396 (Okla.1964).

¶ 9 Those who are alleged to have provided substandard medical care were employed by the licensed nursing home operator, TLC, not HASS. HASS had absolutely no control over or participation in the residents' care.[4] With no control over the agents of TLC who delivered the medical care, there is simply no basis to impose liability on HASS for any substandard care the resident may have received. The trial court's summary judgment in favor of HASS and its manager, Angell, was therefore correct. This Court offers no opinion concerning the liability of this landlord for a resident's injury from a defect or failure in the physical aspects of the facility.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF COURT OF CIVIL APPEALS VACATED; TRIAL COURT AFFIRMED.

¶ 10 ALL JUSTICES CONCUR.

---

**4.** As the Court of Civil Appeals observed, the lease agreement and the relationship engendered thereby do not amount to a joint venture. There was no profit sharing arrangement. TLC was obligated only to pay HASS the fixed monthly rental payments set forth in the lease.