2010 OK CIV APP 38

**In re the MARRIAGE OF Joshua SLATE, Petitioner/Appellee,**

and

**Amber CHADWICK, formerly Slate, Respondent/Appellant.**

**No. 106,134.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 21, 2009.

Rehearing Denied Jan. 19, 2010.

Certiorari Denied March 29, 2010.

Greg Dixon, Montgomery & Dixon, PLLC, Purcell, OK, for Petitioner/Appellee.

Rex D. Brooks, Oklahoma City, OK, for Respondent/Appellant.

WM. C. HETHERINGTON, JR., Judge.

¶1 This appeal involves multiple trial court rulings concerning the custody of the parties' minor son in this dissolution proceeding. Amber Chadwick (Mother) seeks reversal of the award of primary custody to Joshua Slate (Father), arguing the clear weight of the evidence does not support that ruling and its finding that Mother's child abuse allegation against Father was frivolous. Mother also alleges error with the trial court's failure to admit certain evidence. We affirm the trial court's order.

¶2 Mother and Father were married in June 2002, and the same year Mother gave birth to their son, J.S. (the child). The family resided in Washington, Oklahoma until October 2005, when they separated and Mother took the child to live with her family in Shawnee. In February 2006, Father filed a petition, seeking dissolution of their marriage based on incompatibility and joint custody of the child.

¶3 Mother filed a response requesting sole custody and an application for a temporary order concerning certain property and child custody and support. At the hearing held on those issues in April 2006, the trial court approved the parties' settlement regarding the amount of temporary child support and alimony in lieu of property division Father had agreed to pay and ordered temporary joint custody.

¶4 On August 3, 2007, a hearing was held to consider modification of the parties' custody arrangement due to the child's eligibility for pre-kindergarten the next month. After

hearing the testimony of three witnesses, the trial court gave primary custody of the child to Father during the school week and gave Mother custody on weekends and school holidays.

¶ 5 On August 15, 2007, Mother applied for an emergency temporary order and restraining order, alleging Father had abused the child during his last custody which had ended six days earlier. She claimed the child told her that Father had hit the child on the back of his head, causing the child's head to hit a table which resulted in a cut in his left temporal area. By agreement of the parties that same day, the trial court held an *in camera* hearing with only the child and the parties' counsel. After hearing Mother's testimony, the trial court concluded she had not carried her burden to prove irreparable harm and sustained Father's demurrer to the evidence.

¶ 6 At the merits hearing held in November 2007, the parties announced they had reached an agreement concerning the marital home, leaving only the issue of child custody and support and Mother's second application for an emergency temporary order and restraining order that had been filed September 17, 2007. To support this application, Mother called Mr. Williamson, the secondary caseworker from the Oklahoma County Office of the Department of Human Services (DHS),[1] to testify about his interview with the child at Midwest City Regional Hospital on September 7, 2007. During the investigator's cross-examination, he identified pictures he had taken of the child's facial injuries which the trial court admitted into evidence, without any objection.

¶ 7 That same day, Father presented his case, during which he and three witnesses testified, including the primary DHS investigator from McClain County who testified she closed the case against Father because she could not confirm any of Mother's abuse allegations. Mother and three witnesses tes-

tified in her case, and she offered numerous exhibits. At the conclusion of the hearing, the trial court dissolved the parties' marriage based on incompatibility and announced his approval of their property division agreement. After eliminating joint custody because both parties had testified they had not been communicating or co-operating with each other, the trial court expressly found it was in the child's best interest that he be placed in the sole custody of Father and that Mother had made frivolous allegations of child abuse. In the Final Decree of Dissolution, the trial court awarded Mother visitation and ordered her, *inter alia,* to pay child support to Father. Mother's appeal followed.

## STANDARD OF REVIEW

¶ 8 The paramount consideration when determining custody is the child's best interest. *Frankovich v. Frankovich,* 1969 OK 151, 459 P.2d 583. A trial court's determination of primary custody will not be reversed unless it is against the clear weight of the evidence relating to the child's best interest, *Manhart v. Manhart,* 1986 OK 12, 725 P.2d 1234, or unless an abuse of discretion is demonstrated. *Davis v. Davis,* 1960 OK 196, 355 P.2d 572. Discretion is abused, so as to warrant reversal, when a trial judge makes a clearly erroneous conclusion and judgment, against reason and the evidence. *In re BTW,* 2008 OK 80, 195 P.3d 896.

## THE APPEAL

¶ 9 In her first proposition, Mother alleges the trial court erred by finding that Mother's abuse allegation was frivolous because "there was evidence to support the allegation .... [e]specially in light of [the child's testimony]." Relying on definitions of "child abuse" and "neglect," which both 43 O.S. Supp 2006 § 107.3(C) and 10 O.S.2001 § 7102(B) define,[2] in relevant part, as "harm

---

1. The record establishes that in cases where the referral of abuse occurs in a county different from the child's residence, a "second caseworker" makes the initial investigation and if necessary, transfers the case to the "primary caseworker" for completion and ultimate decision.

2. Section 107.3(C)(1) provides, in pertinent part, that " '[c]hild abuse or neglect' shall have the same meaning as such term is defined by the Oklahoma Child Abuse Reporting and Prevention Act (The Act)." Effective May 12, 2009, the Legislature renumbered the majority of the Act's sections under Title 10A, but repealed 10 O.S.

or threatened harm to a child's health" and "non-accidental physical ... injury," Mother claims "[i]t was undisputed that [the child] had a scar above his left eyebrow, a red mark (scratch or abrasion) on his right cheek and multiple bruising (both legs and back) to his body on September 7, 2007."

¶ 10 Mother's argument fails to consider the trial court's express reliance on 43 O.S.Supp.2006 § 107.3(D), when deciding that "[Mother] has made frivolous accusations to the court of child abuse against [Father]" and that it would consider "those false allegations in determining custody of [the child]." Section 107.3(D) provides:

> During any proceeding concerning child custody, *should it be determined by the court that a party has intentionally made a false or frivolous accusation to the court of child abuse or neglect against the other party,* the court *shall* proceed with any or all of the following:
>
> 1. Find the accusing party in contempt for perjury and refer for prosecution;
>
> 2. Consider the false allegations in determining custody; and
>
> 3. Award the obligation to pay all court costs and legal expenses encumbered by both parties arising from the allegations to the accusing party. (Emphasis added.)

¶ 11 We find no published Oklahoma cases interpreting § 107.3(D). Although Mother contends this section requires the same objective standard as used to determine whether a pleading is frivolous, as held by the Court in *State ex rel. Tal v. City of Oklahoma City,* 2002 OK 97, 61 P.3d 234, she makes no real attempt to demonstrate how utilization of that standard would result in a different outcome, and we decline to so find.

¶ 12 Statutory interpretation presents a question of law. *Fanning v. Brown,* 2004 OK 7, 85 P.3d 841. The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute. *Id.* Courts will give the words of a statute a plain and ordinary meaning, unless

a contrary intention plainly appears. *Id.* When the language of a statute is plain and unambiguous, no occasion exists for application of rules of construction, and the statute will be accorded meaning as expressed by the language employed. *City of Durant v. Cicio,* 2002 OK 52, 50 P.3d 218.

¶ 13 By enacting § 107.3(D) in 1997, the Legislature authorized trial courts to penalize, by three mandated options, a party's intentionally-made frivolous or false allegations of child abuse against the other party. The obvious purpose is to discourage such allegations in child custody proceedings. As we interpret § 107.3(D)'s clear and unambiguous language, the issue presented is whether the trial court's *factual* determination that Mother *made a frivolous allegation of abuse* against Father *to the court* is supported by sufficient evidence.

¶ 14 In this case, the trial court not only made the required § 107.3(D) determination but also listed five reasons in its final decree supporting that determination. As summarized, the trial court found that: (1) Mother made her first allegation of physical abuse almost immediately after the court placed primary custody with Father because the child was eligible for pre-kindergarten enrollment; (2) Mother failed to meet the burden of proof in her first application for emergency custody and her second application had strikingly similar allegations; (3) DHS investigated Mother's second application and could not confirm any of her allegations; (4) Mother asked her stepmother to write a letter about previous alleged abuse by Father that was primarily based on Mother's assertions, *i.e.,* the stepmother had no personal knowledge about the assertions; and (5) testimony indicated that Mother had made frivolous allegations of improper child restraint in Father's vehicle at one of the visitation exchanges.

¶ 15 Mother neither denies nor disputes, in full or in part, any of the above bases for the trial court's § 107.3(D) determination, some of which clearly relate to Mother's credibility. On such issues, we must give deference

2001 § 7102, which defined "abuse" as "harm or threatened harm to a child's health, safety or welfare by a person responsible for the child's health, safety or welfare" and defined "harm or threatened harm" to include, *inter alia,* "non-accidental physical or mental injury."

to the trial court who is in the best position to determine controversial evidence by its observation of the parties, the witnesses and their demeanor. *Daniel v. Daniel*, 2001 OK 117, 42 P.3d 863. Based on our review of the record, the trial court's finding that Mother made a frivolous allegation of abuse against Father is supported by sufficient evidence.

¶ 16 Under her second proposition, Mother claims the trial court erred by excluding Father's testimony concerning what she describes in her brief as "his assault and battery on a co-worker December 18, 2003." We first note that Mother made no offer of proof as to the excluded testimony, *i.e.* Father's response to why he was terminated from his position at U.S. Express.

¶ 17 "Error may not be predicated upon a ruling which ... excludes evidence unless ... the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked." 12 O.S.2001 § 2104(A)(2). The admission and exclusion of evidence is within the sound discretion of the trial court. *Jordan v. General Motors Corp.*, 1979 OK 10, 590 P.2d 193. We will not reverse evidentiary decisions of the trial court absent an abuse of discretion which results in prejudice to the proponent. *Mills v. Grotheer*, 1998 OK 33, 957 P.2d 540.

¶ 18 Assuming, without deciding, that the substance of that evidence was apparent from the context of those questions, Mother has not demonstrated any prejudice resulting from the trial court's exclusion of Father's testimony. Mother and another witness testified about Father's prior anger issues and how he was terminated because he knocked a co-worker unconscious at work. Based on our review of the record, Mother has not demonstrated the trial court abused its discretion by excluding Father's testimony.

¶ 19 Mother's final evidentiary challenge addresses the trial court's failure to admit Exhibit 22, the medical records of Midwest City Regional Hospital of the child's emergency room visit on September 7, 2007. Mother's offer of proof made when the trial court sustained Father's hearsay objection at trial was based on the hearsay rule's exception for treatment records.

¶ 20 This argument must also fail because Mother has not demonstrated any prejudice from the trial court's evidentiary ruling. She testified in detail about taking the child to the emergency room and the physician's physical finding. Both Mother and the DHS investigator testified they observed the same physical findings on the child's face, back and legs at the hospital that same day. Moreover, the trial court admitted the pictures of the child taken that day by the DHS investigator. Furthermore, her appellate argument does not indicate what information, if any, was exclusive to the medical records nor does she explain the relevancy of the proffered document. Mother has not demonstrated an abuse of discretion by the trial court's exclusion of hospital medical records.

¶ 21 Under her last proposition, Mother contends that the clear weight of the evidence demonstrates that it was in the child's best interest for Mother to be awarded custody of the child. She argues that she has been the child's primary care giver since his birth and is a good mother, whereas the evidence establishes that Father has a very hot temper and has been violent toward his co-worker and the child.

¶ 22 Our review of the entire record reveals evidence which supports a contrary conclusion on the issue of Father's temper and violence. The same can be said about all the negative evidence concerning Father's conduct and character upon which she relies. More importantly, the trial court heard numerous witnesses testify about the quality of Father's care of the child and the quantity of attention he has given and intends to continue giving to the child. In contrast, Mother admitted she is alone for 2–3 weeks at a time caring for her two infants due to their father's work schedule. The evidence is undisputed that Father has excellent family backup on a daily basis whereas Mother has alienated herself from her family. From this evidence alone, the trial court could have reasonably concluded that placing custody with Father was in the child's best interest. The trial court's determination that the child's best interest is better served by plac-

ing primary custody with Father rather than Mother is not against the clear weight of the evidence or an abuse of discretion. The trial court's judgment is AFFIRMED.

BELL, P.J., and BUETTNER, J., concur.