OSCN Found Document:MISSOURI GAS ENERGY v. GRANT COUNTY ASSESSOR

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 MISSOURI GAS ENERGY v. GRANT COUNTY ASSESSOR
2016 OK CIV APP 44
Case Number: 114405
Decided: 05/13/2016
Mandate Issued: 06/27/2016
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2016 OK CIV APP 44, __ P.3d __

 

IN THE MATTER OF THE ASSESSMENT FOR TAX YEAR 2011 OF CERTAIN PERSONAL PROPERTY OWNED BY MISSOURI GAS ENERGY, A DIVISION OF SOUTHERN UNION COMPANY:

MISSOURI GAS ENERGY, A DIVISION OF SOUTHERN UNION COMPANY, Appellant,
v.
GRANT COUNTY ASSESSOR and GRANT COUNTY BOARD OF EQUALIZATION, Appellees.

APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY, OKLAHOMA

HONORABLE PAUL K. WOODWARD, JUDGE

REVERSED IN PART; AFFIRMED IN PART AND REMANDED

William K. Elias, Karolina D. Roberts, Elias, Books, Brown & Nelson, P.C., Oklahoma City, Oklahoma, for Appellant,
Mart Tisdal, Tisdal & O'Hara, Clinton, Oklahoma, and Patrick O'Hara, Jr., Tisdal & O'Hara, Edmond, Oklahoma, for Appellees.

Bay Mitchell, Judge:

¶1 The dispositive issue presented in this accelerated appeal under Supreme Court Rule 1.36(a)(1) is whether natural gas ("gas") in storage constitutes "goods, wares, and merchandise" for purposes of the Freeport Exemption, Okla. Const. art. X, §6A; or, alternatively, whether the gas allocated to Appellant for taxation purposes has a taxable situs in Oklahoma as required by 68 O.S. §2831.

¶2 Appellant Missouri Gas Energy ("MGE") is a local gas distribution company with its headquarters in Kansas City, Missouri. MGE purchases gas from suppliers and transports the gas via interstate pipelines for resale to its customers in Missouri. MGE has transportation and storage contracts with Southern Star Central Gas Pipeline, Inc. ("Southern Star"), an interstate pipeline company based in Owensboro, Kentucky and regulated by the Federal Energy Regulatory Commission. Southern Star's pipeline system extends across parts of Texas, Oklahoma, Kansas, Missouri, Nebraska, Colorado, and Wyoming. MGE purchases gas from suppliers and then nominates the purchased volumes of gas for receipt into the Southern Star pipeline system at various pooling points. Depending on the type of nomination made by MGE, Southern Star then either transports the gas to MGE's delivery points in Missouri or credits the gas to MGE's system wide storage account. All of MGE's gas is sold to customers in Missouri. MGE sells no gas and has no employees in Oklahoma.

¶3 Southern Star also owns and operates eight underground storage facilities which are connected to its pipeline. One such facility is the Webb facility located in Grant County, Oklahoma. MGE claims the gas injected at the Webb facility enters the Southern Star pipeline system at meter points in Wyoming, Colorado, Kansas, Texas, and Oklahoma. MGE maintains that the gas stored at the Webb facility does not all physically originate in Oklahoma. While Southern Star has possession of the gas in storage, title to the gas remains with its customers, including MGE.

¶4 For ad valorem tax purposes, Southern Star allocates a volume of gas stored at the Webb storage facility as of January 1 of each calendar year to each of its customers, including MGE. Copies of these allocations are provided to the Grant County Assessor, Appellee, who then assesses personal property ad valorem taxes against the allocated storage volumes. For tax year 2011, MGE received its Webb storage facility allocation and timely filed a Freeport Exemption Declaration for the portion of the gas allocated to it which MGE claimed did not originate in Oklahoma. The Grant County Assessor ("Assessor") and Appellee, Grant County Board of Equalization ("Board"), (collectively, "Appellees"), each denied MGE's Freeport Application. MGE timely filed an appeal to the district court seeking review of the Appellees' denials pursuant to 68 O.S. §2880.1.[1] MGE filed a motion for summary judgment arguing there were no disputed facts and that it was entitled to the Freeport Exemption as a matter of law. Alternatively, MGE argued the gas allocated to it which did not originate in Oklahoma did not have a taxable situs in Oklahoma as required under 68 O.S. §2831. Appellees filed a response and cross-motion for summary judgment arguing MGE had not met its burden to show the gas allocated to it met all of the qualifications for a Freeport Exemption, the Freeport Exemption did not apply to natural gas in storage, and that the gas had a taxable situs in Oklahoma.

¶5 At the November 10, 2014 hearing on the cross motions for summary judgment, the district court granted Appellees' summary judgment motion finding the Freeport Exemption, Okla. Const. art. X, §6A, did not apply to natural gas in storage because it is not included in the category of "goods, wares and merchandise" for purposes of the Freeport Exemption. The trial court made no determination whether there were any disputed questions of fact. On August 5, 2015, MGE filed a motion to reconsider based, in part, on the enactment of House Bill ("HB") 1962, effective May 6, 2015, which amended 68 O.S. §2807(9) to provide that oil, gas, and petroleum products constitute "goods, wares, and merchandise" for purposes of ad valorem taxation, including claims of entitlement to the Freeport Exemption.[2] MGE also asked the court to decide whether the gas stored at the Webb facility which did not originate in Oklahoma and allocated to it had taxable situs in Grant County which would have provided an alternative to avoid taxation. The trial court denied MGE's motion to reconsider and found the gas had a taxable situs in Grant County. MGE appealed.

STANDARD OF REVIEW

¶6 Whether summary judgment was properly granted is a question of law which we review de novo. Barker v. State Insurance Fund, 2001 OK 94, ¶7, 40 P.3d 463. "In a de novo review, we have plenary, independent and non-deferential authority to determine whether the trial court erred in its application of the law and whether there is any genuine issue of material fact." Id. Here, MGE has only appealed the trial court's legal conclusions that natural gas in storage does not qualify as "goods, wares, and merchandise" under the Freeport Exemption and that the natural gas at issue has a taxable situs in Grant County. Questions of law, of course, are reviewed de novo. Fanning v. Brown, 2004 OK 7, ¶8, 85 P.3d 841, 845.

GOODS, WARES AND MERCHANDISE

¶7 Under Oklahoma law, "[a]ll property in this state, whether real or personal, except that which is specifically exempt by law. . . shall be subject to ad valorem taxation." 68 O.S. §2804. Article X, §6A of the Oklahoma Constitution, commonly referred to as the "Freeport Exemption" provides:

A. All property consigned to a consignee in this State from outside this State to be forwarded to a point outside this State, which is entitled under the tariffs, rules, and regulations approved by the Interstate Commerce Commission to be forwarded at through rates from the point of origin to the point of destination, if not detained within this State for a period of more than ninety (90) days, shall be deemed to be property moving in interstate commerce, and no such property shall be subject to taxation in this State; provided, that goods, wares and merchandise, whether or not moving on through rates, shall be deemed to move in interstate commerce, and not subject to taxation in this State if not detained more than nine (9) months where such goods, wares and merchandise are so held for assembly, storage, manufacturing, processing or fabricating purposes; provided, further, that personal property consigned for sale within this State must be assessed as any other personal property.

B. The Legislature shall enact laws governing the procedures for making application to the county assessor for purposes of the exemption authorized by this section, including the time as of which the application must be filed and information to be included with the application.

(Emphasis added). MGE contended a portion of the natural gas in storage at the Webb storage facility and allocated to it falls under the terms of the second clause of the Freeport Exemption (emphasized above). The second clause exempts property from ad valorem taxation under the following circumstances:

1. The property must be "goods, wares and merchandise." Okla. Const. art. X, §6A.

2. The property must be held for "assembly, storage, manufacturing, processing or fabricating purposes." Id.

3. The property must originate from outside of Oklahoma. Id.; In the Matter of the Assessment of Personal Property Taxes Against Missouri Gas Energy, a Division of Southern Union Company for Tax Years 1998, 1999, and 2000, 2008 OK 94, ¶¶67-80, 234 P.3d 938 ("MGE I").

4. The property must be held in Oklahoma for nine (9) months or less. Okla. Const. art. X, §6A.

5. The property must be shipped to and sold at a final destination outside of Oklahoma. Id.; Austin, Nichols, & Co. v. Okla. County Bd. of Tax-Roll Corrections, 1978 OK 65, ¶21, 578 P.2d 1200.

Appellees argued in their summary judgment motion that none of the gas allocated to MGE at the Webb storage facility qualified for the Freeport Exemption because natural gas in storage did not qualify as "goods, wares and merchandise." Appellees relied on 68 O.S. 2011 §2807 which defined thirteen (13) different categories of personal property for the purposes of ad valorem taxation. Appellees argue because "oil, gas, and petroleum products in storage" are defined separately from any other reference to "goods, wares, and merchandise" that "oil, gas, and petroleum products in storage," including natural gas in storage, cannot be considered "goods, wares, and merchandise" for purposes of ad valorem taxation. Compare 68 O.S. 2011 §2807(12) with 68 O.S. 2011 §2807(1), (8), (9), and (11).[3] The trial court agreed and granted Appellees' motion for summary judgment based on this legal conclusion.

¶8 Whether natural gas in storage qualifies as "goods, wares, and merchandise" for the purposes of the Freeport Exemption, Okla. Const. art. X, §6A, has not been addressed by any appellate courts in this state.[4] MGE argued below that natural gas in storage qualified as "goods, wares, and merchandise" for several reasons. First, MGE noted those terms were not defined within the Freeport Exemption. Accordingly, MGE argued, the plain and ordinary meaning of those terms should be applied and such application necessarily included natural gas in storage.[5] MGE bolstered its argument by pointing out that Oklahoma's version of the Uniform Commercial Code ("OUCC"), 12A O.S. §2-105, defines "goods" in relevant part as:

[A]ll things . . . which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid . . . . 'Goods' also includes . . . . other identified things attached to realty as described in [section 2-107] . . . .

Section 2-107 further provides that "[a] contract for the sale of minerals or the like, including oil and gas . . . . to be removed from realty is a contract for the sale of goods within this article if they are to be severed by the seller . . . ." 12A O.S. §2-107(1). Additionally, the Oklahoma Supreme Court has recognized that "[a] contract for delivery of natural gas is recognized as a sale of goods under the [OUCC]." Golsen v. ONG Western, Inc., 1988 OK 26, ¶1, 756 P.2d 1209 (Kauger, J. concurring); see also id. at ¶12 (majority opinion) (setting forth damages for breach of contract for sale of goods in a case involving a contract for the sale of natural gas).

¶9 MGE also argued that the ballot title placed before the people for a vote on the Freeport Exemption supported its position that natural gas in storage qualifies as "goods, wares, and merchandise." The ballot title stated:

Shall a Constitutional Amendment amending Article X of the Constitution of the State of Oklahoma, by adding a new section thereto, to be designated as Section 6A, providing that tangible personal property moving through Oklahoma from one state to another state shall not acquire situs within Oklahoma for purposes of taxation; and providing tangible personal property held for assembly, storage, manufacturing, processing, or fabricating purposes shall not be subject to taxation in Oklahoma if such property is not detained in the State for more than nine (9) months, be approved by the people?

MGE I, 2008 OK 94, n. 95 (internal citations omitted) (emphasis added). "[A] ballot title is a contemporaneous construction of a constitutional amendment and as such weighs heavily in determining an amendment's meaning." MGE I, at n. 96. MGE argued because the ballot title did not differentiate between different types of tangible personal property, natural gas in storage is included as tangible personal property for which the Freeport Exemption is available.

¶10 Finally, MGE highlighted the forms it used to report its allocation of gas at the Webb Facility. The Oklahoma Tax Commission ("OTC") promulgated Form 901-P for "[a]ll business concerns, corporations, partnerships or individuals" to report taxable petroleum related assets which are not exempt by payment of gross production tax on a county-by-county basis. See OTC Form 901-P.[6] See also Okla. Admin. Code §710:10-8 (administrative rule concerning property eligible for exemption from ad valorem taxation due to "in lieu" payment of gross production tax). Part Three of Form 901-P provides a space to report inventory of petroleum products in storage and also includes a specific line entry for taxpayers to reduce taxable inventory by an amount claimed to be exempt from taxation due to the Freeport Exemption, which is reported on OTC Form 901-F.[7] MGE argues these forms tilt heavily towards the conclusion that natural gas in storage qualifies as "goods, wares, and merchandise" for purposes of the Freeport Exemption because the agency tasked with the administration of the tax laws has interpreted the Freeport Exemption to apply to natural gas in storage. See e.g. Okla. Industries Authority v. Barnes, 1988 OK 98, n. 9, 769 P.2d 115 ("A long-continued construction of statutory law by an agency charged with its enforcement must be given great weight.").

¶11 During the pendency of this case, the Legislature changed the definition of personal property for purposes of ad valorem taxation through the enactment of HB 1962. 2015 Okla. Sess. Law. Ch. 262, §1 (codified at 68 O.S. Supp. 2016 §2807) (effective May 6, 2015). The text of HB 1962 stated it was "[a]n Act . . . providing for inclusion of certain tangible personal property for purposes of [the Freeport Exemption]" and also stated it had both retrospective and prospective effect. Id. HB 1962 altered subsections 9 and 12 of §2807 as follows:

9. All goods and capital employed in merchandising, wares, and merchandise, including oil, gas, and petroleum products severed from the realty;

12. a. All tanks and containers used to store or hold crude oil or any of its products or byproducts and all tanks and containers used to store or hold gasoline, water, or other liquids or gases,

b. All oil, gas, water or other pipelines,

c. All telegraph and telephone lines,

d. All railroad tracks, and

e. All oil, gas, and petroleum products in storage . . . .

(Deleted text indicated by strikethrough, new text indicated by underline.)

MGE argued HB 1962 clarified that natural gas in storage qualified as "goods, wares, and merchandise" for purposes of the Freeport Exemption. E.g., Texas County Irr. and Water Resources Ass'n v. Okla. Water Resources Board, 1990 OK 121, ¶6, 803 P.2d 1119 (setting forth general rule that statutory amendments are to be applied prospectively only unless the legislature clearly provides for retroactive application and stating that if meaning of statute was in doubt, "a presumption arises that the amendatory act was intended to clarify the existing law's ambiguity"). Appellees argue this expanded definition of personal property cannot be applied retroactively because it impermissibly expands the scope of the Freeport Exemption beyond what was originally intended. We do not agree.

¶12 To support their position, Appellees rely on an overly strict interpretation of "goods, wares, and merchandise" which is not supported by Oklahoma law or the history of the Freeport Exemption. The definition of personal property has remained substantively unchanged from the time the Freeport Exemption was placed on the ballot until the 2015 changes. Compare 68 O.S. 1961 §15.2 (definition of personal property) with 68 O.S. Supp. 1965 §2420 (citation to the definition of personal property after renumbering of statutes) and 68 O.S. 1991 §2807 (citation after subsequent renumbering of statutes) and 68 O.S. 2011 §2807. The plain language of HB 1962 establishes its purpose was to clarify that natural gas severed from the realty was always meant to be included as "goods, wares, and merchandise" for purposes of the Freeport Exemption. Cf. MGE I, 2008 OK 94, ¶81 ("Natural gas is tangible personal property. It has a location and it has an owner.") Given this consistent statutory definition, the original ballot title, which did not differentiate between different types of tangible personal property, the treatment of severed natural gas as "goods" in other contexts, and the OTC's interpretation, we find that natural gas severed from the realty qualifies as "goods, wares, and merchandise" for purposes of the Freeport Exemption. The decision of the trial court is REVERSED and REMANDED.

TAXABLE SITUS

¶13 In the alternative, MGE argued Appellees could not establish that the gas allocated to it which did not originate in Oklahoma had a taxable situs in Oklahoma as required by 68 O.S. §2831.[8] Section 2831(E) provides:

Tangible personal property moving through the state from a point outside the state, in transit to a final destination outside the state, shall for purposes of taxation, acquire no situs in the state. The owner shall, if required, in order to obtain a determination that any property has not acquired a situs in this state, submit to the appropriate assessing officer documentary proof of the in-transit character and the final destination of the property.

MGE I is the only recent appellate decision addressing taxable situs under 68 O.S. §2831. Again, the Supreme Court decided the question on the fact that the gas originated from within Oklahoma. Accordingly, the exception to taxation available under §2831 was unavailable to MGE in that case. MGE I, 2008 OK 94, ¶¶26-28. However, the Supreme Court also found that taxing the gas stored in Oklahoma "for a substantial part of the year" was consistent with the exercise of due process. Id. at ¶¶29-31.[9] "[D]espite the parties' intention that MGE's stored natural gas will ultimately be delivered to Missouri, its sojourn in storage in Oklahoma gives it at least a minimal nexus to this state sufficient to establish tax situs and to survive a due process attack." Id. at ¶32. Given this holding in MGE I, we find that the natural gas at issue here, which the record demonstrates was stored at the Webb storage facility for approximately nine months, has a taxable situs in Oklahoma, regardless of where the natural gas originated. Thus, if the Freeport Exemption did not apply in this case the gas would be taxable in Oklahoma. This portion of the trial court's decision is AFFIRMED.

¶14 On remand, the trial court is to determine the amount of gas which is exempt from ad valorem taxation due to the Freeport Exemption, i.e., to determine the amount of gas which MGE claims originated outside of Oklahoma, whether such gas was stored in Oklahoma for nine months or less, and the amount of that gas which was shipped and sold outside of Oklahoma for Tax Year 2011.

¶15 REVERSED IN PART; AFFIRMED IN PART AND REMANDED for further proceedings.

BUETTNER, V.C.J., P.J., and GOREE, J., concur.

FOOTNOTES

[1] The "right of appeal of either [the taxpayer or county assessor] may be upon questions of law or fact including value, or upon both questions of law and fact." 68 O.S. §2880.1(A).

[2] The written order memorializing the trial court's decision to grant Appellees' summary judgment motion was entered September 17, 2015.

[3] The version of 68 O.S. 2011 §2807 in effect at the time the parties' competing summary judgment motions were pending provided in relevant part:

§2807 - Personal property defined

Personal property, for the purpose of ad valorem taxation, shall be construed to include:

1. All goods, chattels and effects;

8. All machinery and materials used by manufacturers, and all manufactured articles, including all machinery and equipment of cotton gins, cottonseed oil mills, newspaper and printing plants, refineries, gasoline plants, flour and grain mills and elevators, bakeries, ice plants, laundries, automobile assembly plants, repair shops, breweries, radio broadcasting stations, tractors, graders, road machinery and equipment, and all other similar or related plants or industries;

9. All goods and capital employed in merchandising;

11. All agricultural implements or machinery, goods, wares, merchandise, or other chattels, in this state, in possession of, or under the control of, or held for sale by, any warehouseman, agent factor or representative in any capacity of any manufacturer, or any dealer or agent of any such manufacturer;

12. a. All tanks and containers used to store or hold crude oil or any of its products or byproducts and all tanks and containers used to store or hold gasoline, water, or other liquids or gases,
b. All oil, gas, water or other pipelines,
c. All telegraph and telephone lines,
d. All railroad tracks,
e. All oil and petroleum products in storage . . . .

[4] In the 2008 decision of MGE I, the Supreme Court declined to address the "definitional question" of whether "goods, wares, and merchandise" included natural gas in storage for purposes of the Freeport Exemption. MGE I, 2008 OK 94, ¶69. Rather, the Supreme Court decided the case based solely on the physical origination of the gas at issue and determined all of the gas for which MGE claimed entitlement to the Freeport Exemption originated in Oklahoma. Because an out-of-state origination is required for entitlement to the Freeport Exemption, the gas at issue in MGE I did not qualify. Id.

[5] MGE cited the online version of the Merriam-Webster Dictionary which provides the following definitions:

"Goods" are defined, in relevant part, as "something that has economic utility or satisfies an economic want . . . personal property having intrinsic value . . . ."

http://www.merriam-webster.com/dictionary/goods (last visited April 18, 2016).

"Wares" are defined, in part, as "article[s] of merchandise." http://www.merriam-webster.com/dictionary/wares (last visited April 18, 2016).

"Merchandise" is defined as "the commodities or goods that are bought and sold in business." http://www.merriam-webster.com/dictionary/merchandise (last visited April 18, 2016).

[6] Form available at https://www.ok.gov/tax/documents/901P.pdf (site last visited April 18, 2016).

[7] Form available at https://www.ok.gov/tax/documents/901F.pdf (last visited April 18, 2016).

[8] Subsection A states "[a]ll property, both real and personal, having an actual, constructive or taxable situs in this state, shall, except as hereinafter provided, be listed and assessed and taxable ...."

[9] "[T]he bare question whether such property has tax situs in a state for the purpose of subjection to a property tax is one of due process." MGE I, at ¶31 (footnotes omitted). "The stored volumes of gas receive the continuous protection, benefits and opportunities afforded by the state and county throughout the tax year. While the volume of gas present [in Woods County, Oklahoma] fluctuates, some volume is there at all times. Even if the gas is 'in transit' in interstate commerce for federal regulatory purposes, it is present in Woods County with a sufficient degree of permanence to satisfy the dictates of due process." Id. at ¶33.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 26, 756 P.2d 1209, 59 OBJ 719, Golsen v. ONG Western, Inc.
Discussed
 1988 OK 98, 769 P.2d 115, 59 OBJ 2457, Oklahoma Industries Authority v. Barnes
Discussed
 1990 OK 121, 803 P.2d 1119, 61 OBJ 3027, Texas County Irr. and Water Resources Ass'n v. Oklahoma Water Resources Bd.
Discussed
 2001 OK 94, 40 P.3d 463, 72 OBJ 3283, BARKER v. STATE INS. FUND
Discussed
 2004 OK 7, 85 P.3d 841, FANNING v. BROWN
Discussed
 2008 OK 94, 234 P.3d 938, IN THE MATTER OF THE ASSESSMENT OF PERSONAL PROPERTY TAXES
Discussed at Length
 1978 OK 65, 578 P.2d 1200, AUSTIN, NICHOLS & CO. v. OKLAHOMA COUNTY BD. OF TAX-ROLL CORRECTIONS
Discussed
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 2420, Repealed by Laws 1988, HB 1750, c. 162, § 165, eff. January 1, 1992
Cited
 68 O.S. 2804, Property Subject to Ad Valorem Taxation
Cited
 68 O.S. 2807, Construction of Personal Property
Discussed at Length
 68 O.S. 2831, Listing and Assessment of Property - Personal Property - Cattle or Livestock - Tangible Personal Property
Discussed at Length
 68 O.S. 2880.1, Right to Appeal - Notice of Appeal - Duty of District Attorney - Presumption
Discussed
Title 12A. Uniform Commercial Code
 Cite
Name
Level

 12A O.S. 2-105, Definitions: Transferability - "Goods" - "Future" Goods - "Lot" - "Commercial Unit"
Cited
 12A O.S. 2-107, Goods to be Severed from Realty - Recording
Cited