OSCN Found Document:BROOKE v. REED

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

BROOKE v. REED2025 OK 86Case Number: 121604Decided: 11/25/2025THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 86, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

NICHOLLES BROOKE, Plaintiff/Appellant,
v.
KEITH REED, RN, MPH, CPH, in his official capacity as OKLAHOMA STATE DEPARTMENT OF HEALTH COMMISSIONER, Defendant/Appellee.

ON CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION IV

¶0 This appeal concerns the Oklahoma Open Records Act and the public's access to metadata.

OPINION OF THE COURT OF CIVIL APPEALS IS VACATED;
ORDER OF THE DISTRICT COURT IS AFFIRMED.

Nicholles Brooke, Pro Se, Oklahoma City, Oklahoma, for Appellant.

Garry M. Gaskins, II, Lauren J. Ray, Evan J. Elder, Will Flanagan, Redmond Wortham, Office of the Attorney General of the State of Oklahoma, Oklahoma City, Oklahoma, for Appellee.

KANE, J.:

¶1 The question presented is whether the Oklahoma Open Records Act (ORA), 51 O.S.Supp.2019 §§ 24A.1

FACTS AND PROCEDURAL HISTORY

¶2 Plaintiff/Appellant Nicholles Brooke made an open records request to the Oklahoma State Department of Health (OSDH) on March 23, 2020. His request was for "[a]ll correspondence with attachments and other public records regarding the COVID-19 pandemic sent to Governor Stitt, or anyone working in the Governor's office, by the State Epidemiologist or others in the Department of Health." The request was limited to seven search terms in correspondence transmitted between January 1, 2020 and March 23, 2020. Plaintiff's accompanying email stated his request was "to inspect or receive digital copies." Brooke indicated he preferred to receive the documents via email but would be willing to inspect them in person as well. OSDH immediately responded acknowledging receipt of the request. Brooke sent a follow up email on March 31, 2020 inquiring about the status of his request. OSDH immediately replied that it was still processing the request and the records would be made available at the earliest opportunity.

¶3 Sixteen days after making his initial request, on April 8, 2020, Brooke filed a petition in district court seeking a declaratory judgment that OSDH had violated the ORA and an injunction requiring OSDH to produce the requested public records. The district court denied OSDH's motion to dismiss in which OSDH argued Brooke's request was still being processed and he could not file suit until his request had been denied. See 51 O.S. § 24A.17

¶4 OSDH provided Brooke several batches of records between August 2020 and February 2021. In a brief filed by Brooke on April 5, 2021, he complained that he could not determine whether the correspondence were to the Governor's office and that the records were in Portable Document Format (PDF), which did not include metadata. He contended the metadata found in native files was essential for organizing, searching, and understanding the records. Brooke argued some of the emails produced were missing information about the sender, recipient, and the date the message was sent.

¶5 The district court held an evidentiary hearing on Brooke's request for injunctive relief on May 12, 2021 and August 17, 2021. During the hearing, Brooke clarified that his request for "digital copies" was a request for copies of the native files, which contain embedded metadata. His position was the OSDH must provide digital copies of the original digital files, and a PDF is not sufficient. The district court did not issue a ruling after the hearing. Rather, the court ordered the parties to confer on the production of electronic records. It was undisputed that OSDH hired additional staff in order to respond to Brooke's records request and that OSDH provided Brooke more than 11,000 pages of records in PDF format. In a status report, Brooke stated that in February 2022 OSDH did produce some email messages in their native file format.

¶6 In October 2021, OSDH filed three separate motions for summary judgment arguing Brooke was not denied the records requested, that OSDH was not required to provide the records in their native format, and that the request caused excessive disruption to OSDH's activities. Brooke objected arguing that motions for summary judgment filed after trial were untimely.

¶7 The district court heard the motions on August 3, 2023 and granted summary judgment to OSDH, finding OSDH was not required to provide native files under the ORA and that OSDH had substantially complied with all its duties under the ORA by producing records in machine-readable PDF format. Brooke appealed. The Court of Civil Appeals reversed, finding OSDH was required to turn over the native files if it had the capability to do so. COCA held that the ORA requires agencies to produce the record in the format it was made and stored, i.e., in its native file format. After OSDH's petition for rehearing was denied, it sought a writ of certiorari, which this Court granted on March 25, 2025.

STANDARD OF REVIEW

¶8 The material facts are not in dispute. This appeal requires us to interpret provisions of the ORA. Such an issue of statutory construction presents a question of law, which we review de novo. See Fanning v. Brown, 2004 OK 785 P.3d 841Id.

ANALYSIS

¶9 The question presented is whether the ORA requires a public body to provide copies of email records in their native file format, which includes embedded metadata. 51 O.S. § 24A.551 O.S. § 24A.3

¶10 The native file format for Outlook email messages is a Personal Storage Table (PST). A PST file is used to back up, export, and import Outlook data, including email messages, contacts, appointments, tasks, and notes. What is Metadata? IBM, https://www.ibm.com/think/topics/metadata (Oct. 21, 2024). BLACK'S LAW DICTIONARY, 12th ed. (2024) defines "metadata" as "[s]econdary data that organize, manage, and facilitate the use and understanding of primary data."

¶11 This is a situation where an illustration is helpful. OSDH provided Brooke the following Outlook email message in PDF format:

ROA, Tab 6, Hr'g Tr., May 12, 2021, ex. J at 567. The PDF copy identifies the sender, recipient, date and time sent, whether there are any attachments, and the full body of the message.

¶12 Now, compare the PDF to a PST file. The following is an example of the internet header in an Outlook email message PST file:

from mail.litwareinc.com ([10.54.108.101]) by mail.proseware.com with Microsoft SMTPSVC(6.0.3790.0);Wed, 12 Dec 2007 13:39:22 -0800Received: from mail ([10.54.108.23] RDNS failed) by mail.litware.com with Microsoft SMTPSVC(6.0.3790.0);Wed, 12 Dec 2007 13:38:49 -0800From: "Kelly J. Weadock" <kelly@litware.com>To: <anton@proseware.com>Cc: <tim@cpandl.com>Subject: Review of staff assignmentsDate: Wed, 12 Dec 2007 13:38:31 -0800MIME-Version: 1.0Content-Type: multipart/mixed;Microsoft Office Outlook, Build 12.0.4210X-MimeOLE: Produced By Microsoft MimeOLE V6.00.2800.1165Thread-Index: AcON3CInEwkfLOQsQGeK8VCv3M+ipA==Return-Path: kelly@litware.comMessage-ID: <MAILbbnewS5TqCRL00000013@mail.litware.com>X-OriginalArrivalTime: 12 Dec 2007 21:38:50.0145 (UTC)

View Internet Message Headers in Outlook, Microsoft, https://support.microsoft.com/en-us/office/view-internet-message-headers-in-outlook-cd039382-dc6e-4264-ac74-c048563d212c#tab=classic_outlook (last visited Nov. 24, 2025). This is what metadata looks like. Brooke contends he is entitled to the PST files that contain this type of information about the email messages, as opposed to the PDF above. Notably, the PDF contains the full body of the message. On the other hand, the internet header in the PST file does not show the content of the message. The "correspondence" Brooke requested is found in the PDF copy. To view the actual correspondence with the PST file, Brooke would need to import the PST file and view the message using Outlook software.

¶13 The pertinent question is whether the phrase "data files created or used with computer software," 51 O.S. § 24A.3See Rickard v. Coulimore, 2022 OK 9505 P.3d 920 To do this, we first look to the language of the statute. Id. If the statutory language is clear and unambiguous, this Court must apply the plain and ordinary meaning of the words. Id.; 25 O.S.2011 § 1See Rickard, 2022 OK 9

¶14 A statute is ambiguous if the language is susceptible to more than one reasonable interpretation. See Childers v. Arrowood, 2023 OK 74541 P.3d 825 "Record" is defined clearly by 51 O.S. § 24A.3See Thurston v. State Farm Mut. Auto. Ins. Co., 2020 OK 105478 P.3d 415Heath v. Guardian Interlock Network, Inc., 2016 OK 18369 P.3d 374

¶15 We find the ordinary, everyday meaning of "data files" does not include embedded metadata. The term "data files" is broad, but it does not mean data about data.

¶16 Additionally, nothing in the ORA requires that copies of records be produced in the specific format requested. See 51 O.S. § 24A.5 Wagner v. Sheriff of Custer Cty., 2021 OK CIV APP 20492 P.3d 124051 O.S. § 24A.551 O.S. §24A.5see also 51 O.S. § 24A.2See Wagner, 2021 OK CIV APP 20

¶17 Brooke requested "correspondence" records. In this case, the correspondence records were email messages. As demonstrated above, the PDF copies of Outlook email messages provided Brooke reasonable access to the correspondence he requested.

¶18 When the ORA was adopted in 1985, the Oklahoma Legislature was simply not contemplating the metadata Brooke is requesting. The definition of "record" has not changed since the Act's adoption in 1985. Outlook was not released by Microsoft until 2012.

¶19 Determining how advancements in technology should affect government transparency and the public's access to public records are matters of policy for the legislative branch. It is the Oklahoma Legislature's duty to determine what constitutes the inspection, copying, or mechanical reproduction of modern data files. Should a public body be required to produce electronic records in a specific format, e.g. printed hard copies, PDFs, native files? Should a public body be required to produce electronic records in the format in which they were created and maintained? Should a public body be required to produce records in the format requested if the records can be readily reproduced in that format? Should a public body be required to produce native files as a convenience to computer scientists or tech savvy citizens who wish to organize and review records with automated software? Metadata can mean many things. If the ORA includes metadata, the Oklahoma Legislature needs to define the term.

¶20 Finally, this appeal also raises a procedural issue. Brooke argues OSDH's motions for summary judgment were untimely, because they were not filed twenty days before the trial on May 12, 2021. See Okla.Dist.Ct.R. 13, 12 O.S., ch. 2, app. He contends the trial court erred by granting summary judgment after a trial on the merits. OSDH asserts that none of the hearings should be characterized as a trial on the merits. There was no scheduling order; no pre-trial conference; no pre-trial briefs or exchange of witness and exhibits lists; and the event is listed on the docket as "open records injunction/evidentiary hearing" and was never referred to as a "bench trial" on the docket.

¶21 During the May and August 2021 hearings, the trial court received witness testimony and other evidence. However, ultimately, the evidentiary hearing revealed that the material facts were not in dispute. The case turned on a pure question of law: does the ORA require a public body to produce email records in native file format? We hold the trial court did not err in permitting and ruling on the motions for summary judgment.

CONCLUSION

¶22 We hold that the ORA does not require a public body to provide copies of email records in their native file format.

OPINION OF THE COURT OF CIVIL APPEALS IS VACATED;
ORDER OF THE DISTRICT COURT IS AFFIRMED.

Concur: Kuehn, V.C.J., Edmondson, Gurich, Darby, and Kane, JJ.

Concur in Result: Jett, J. (by separate writing)

Dissent: Rowe, C.J., Winchester and Combs, JJ. (by separate writing)

FOOTNOTES

51 O.S. § 24A.17

See, e.g., Roe v. Phillips Cty. Hosp., 522 P.3d 277, 280-282 (Kan. 2023) (holding copies must be in the format in which they are stored); O'Neill v. City of Shoreline, 240 P.3d 1149, 1152-54 (Wash. 2010) (holding metadata associated with an email is a public record); Lake v. City of Phoenix, 218 P.3d 1004, 1007-08 (Ariz. 2009) (holding when a public record is maintained in electronic format, the public is entitled to an electronic version of the record, including any embedded metadata).

Export Emails, Contacts, and Calendar Items to Outlook Using a .pst File, MICROSOFT, https://support.microsoft.com/en-us/office/export-emails-contacts-and-calendar-items-to-outlook-using-a-pst-file-14252b52-3075-4e9b-be4e-ff9ef1068f91#picktab=classic_outlook (last visited Nov. 24, 2025); Import Email, Contacts, and Calendar from an Outlook .pst File, MICROSOFT, https://support.microsoft.com/en-us/office/import-email-contacts-and-calendar-from-an-outlook-pst-file-431a8e9a-f99f-4d5f-ae48-ded54b3440ac#picktab=classic_outlook (last visited Nov. 24, 2025).

View Internet Message Headers in Outlook, MICROSOFT, https://support.microsoft.com/en-us/office/view-internet-message-headers-in-outlook-cd039382-dc6e-4264-ac74-c048563d212c#tab=classic_outlook (last visited Nov. 24, 2025).

th edition was published in 2009. BLACK'S indicates 1970 was the earliest known use of the word.

Supra note 5.

51 O.S. § 24A.3

Reading Law: The Interpretation of Legal Texts 32 (2012).

https://news.microsoft.com/source/2013/02/18/microsoft-officially-launches-outlook-com/.

See, e.g., Md. Code Ann., General Provisions, § 4-205 (West 2015) (defining metadata).

More Than Just Ones and Zeros: The Reproducibility of Metadata Under the Freedom of Information Act, 9 I/S: J.L. & POL'Y FOR INFO. SOC'Y 327, 348 (2013).

JETT, J., concurring in result:

¶1 This case can be resolved by answering a narrow question: Did the State Health Department provide Nicholles Brooke the records he requested? I believe the answer is plainly "yes," so we need not decide whether agency metadata is subject to the Open Records Act.

¶2 On May 23, 2020, Brooke sent the Department of Health the following request: "I request to inspect or receive digital copies of all correspondence with attachments & other public records regarding the COVID-19 pandemic sent to Governor Stitt, or anyone working in the Governor's office, by the State Epidemiologist or others in the Department of Health."

¶3 Nonetheless, Brooke claims he is entitled to receive the metadata--data about data--relating to these records. The problem is that Brooke did not ask for the metadata before filing suit, and the Open Records Act allows civil suits only for "records requested and denied prior to filing of the civil suit . . . ." 51 O.S. § 24A.17

¶4 While a state agency must "provide prompt, reasonable access to its records," it "may establish reasonable procedures which protect the integrity and organization of its records and to prevent excessive disruptions of its essential functions." 51 O.S. § 24A.5

¶5 In this case, the Department of Health produced what one would reasonably assume Brooke wanted based on the words of his request. We need not decide whether the Open Records Act requires production of metadata if specifically requested. I concur in result and would affirm the district court's grant of summary judgment to Defendant.

FOOTNOTES

COMBS, J., with whom WINCHESTER, J., joins, dissenting:

¶1 I dissent from the majority's judgment vacating the opinion of the Court of Civil Appeals (COCA) and affirming the trial court's summary judgment and dismissal of Mr. Brooke's civil suit. I would withdraw certiorari as improvidently granted, thereby leaving in place COCA's reversal of the trial court. Furthermore, I disagree with the majority's reasoning that finds public agencies are not required to provide access to public records existing in the format of metadata, which is just one more reason to leave COCA's opinion in place. The reasons for my dissent are set forth below.

¶2 First of all, the majority addresses an issue different from that raised by the Commissioner of Health in his petition for certiorari, demonstrating the majority's determination to address an issue they deem more important--despite its waiver by the Petitioner. Rather than addressing the question "squarely present[ed]" in the Commissioner's petition for certiorari "of whether 51 O.S. § 24A.1751 O.S.Supp.2020, §§ 24A.3see Majority Op. ¶¶ 9--21; the only mention of that statute appears in their recitation of the "Facts and Procedural History" of this case, as the Health Commissioner had initially opposed Mr. Brooke's lawsuit with an unsuccessful motion to dismiss that invoked section 24A.17, see Majority Op. ¶ 3 & n.1. In view of all this, it would seem the majority's opinion about whether a public agency's "records" include the underlying metadata is merely advisory.

¶3 On the flip side, the Health Commissioner did not raise on certiorari the issue addressed by the majority. He thereby waived this Court's review of the issue the majority decides. Okla. Sup. Ct. R. 1.180(b), 12 O.S.2021, ch. 15, app. 1 ("Issues not presented in the petition for certiorari may not be considered by the Supreme Court."); Beyrer v. The Mule, LLC, 2021 OK 45496 P.3d 983Barnett v. Barnett, 1996 OK 60917 P.2d 473See, e.g., State ex rel. Dep't of Transp. v. Little, 2004 OK 74100 P.3d 707Hough v. Leonard[, 1993 OK 112867 P.2d 438Mosier v. Okla. Prop. & Cas. Ins. Guar. Ass'n, 1994 OK 145890 P.2d 878Ford v. Ford, 1988 OK 103766 P.2d 950

¶4 Looking through the record, it further appears the Health Commissioner hasn't previously raised the issue set forth in his petition for certiorari at the district court level. I see where he raised a very similar argument at the motion-to-dismiss stage and again at the motion-for-summary-judgment stage based on the same statute, 51 O.S.Supp.2020, § 24A.17See ROA, Vol. 3, Doc. 11, Def.'s 1st Mot. Summ. J.: Pl. Was Never Denied Records 9, Oct. 15, 2021; Majority Op. ¶ 3 (discussing the content of the motion to dismiss). But in those motions, the Health Commissioner was arguing that Mr. Brooke "was never denied any records prior to filing his lawsuit," Def.'s 1st Mot. Summ. J., supra, at 13 (emphasis added), not that Mr. Brooke never requested native file format records and was therefore never subsequently denied such records. To reach the issue actually raised in the Health Commissioner's petition for certiorari, we must remand the case--as suggested by the Court of Civil Appeals, see COCA's Op. ¶ 18 ("We acknowledge that disclosure under the ORA is subject to statutory limitations, including limitations on the disclosure of sensitive personal information and that there may be individual records in OSDH's possession that would not be subject to disclosure without redaction. Additionally, the record in this case indicates that OSDH might not currently have the technological means to follow other requirements of the act while producing the record in its native format. These issues, and more, constitute material questions of fact that must be explored on remand." (emphasis added))--for the district court to determine in the first instance. see State ex rel. Bd. of Regents of Univ. of Okla. v. Lucas, 2013 OK 14297 P.3d 378Myers v. Mo. Pac. R.R. Co., 2002 OK 6052 P.3d 1014see Lee v. Bueno, 2016 OK 97381 P.3d 736

¶5 If the majority insists, however, upon issuing an advisory opinion on whether a public agency's "records" include the underlying metadata, I disagree with their ultimate conclusion on that issue. COCA got it right. Based on the plain language of the ORA, "[a]ll records of public bodies and public officials shall be open to any person for inspection, copying, or mechanical reproduction," and that "means all documents, including, but not limited to, any book, paper, photograph, microfilm, data files created by or used with computer software, computer tape, disk, record, sound recording, film recording, video record or other material regardless of physical form or characteristic, created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies, or their representatives in connection with the transaction of public business, the expenditure of public funds or the administering of public property." 51 O.S.Supp.2020, §§ 24A.3data about data," see Majority Op. ¶ 15, is nothing more than ipse dixit. If the State Health Department generates records containing data about data, the language of sections 24A.3(1) and 24A.5 is broad enough to require production of those records.

¶6 More importantly, the majority's interpretation completely ignores other state's precedents based upon open records acts with language similar to Oklahoma's act, as discussed in COCA's opinion. See COCA's Op. ¶¶ 11--14. In 2009, the Arizona Supreme Court held that the electronic version of a record, including any embedded metadata, is subject to disclosure under Arizona's public records law:

The court of appeals . . . . erred, however, by parsing the electronic version of [the public official]'s notes and focusing separately on the metadata contained within the document. The pertinent issue is not whether metadata considered alone is a public record. Instead, the question is whether a "public record" maintained in an electronic format includes not only the information normally visible upon printing the document but also any embedded metadata. Here, the City does not dispute that [the public official]'s notes are public records kept in an electronic format.

The metadata in an electronic document is part of the underlying document; it does not stand on its own. When a public officer uses a computer to make a public record, the metadata forms part of the document as much as the words on the page. Arizona's public records law requires that the requestor be allowed to review a copy of the "real record." It would be illogical, and contrary to the policy of openness underlying the public records laws, to conclude that public entities can withhold information embedded in an electronic document, such as the date of creation, while they would be required to produce the same information if it were written manually on a paper public record.

We accordingly hold that when a public entity maintains a public record in an electronic format, the electronic version of the record, including the embedded metadata, is subject to disclosure under our public records law.

Lake v. City of Phoenix, 218 P.3d 1004, 1007--08 (Ariz. 2009) (footnote and citations omitted); accord Paint Township v. Clark, 109 A.3d 796, 804 (Pa. Commw. Ct. 2015) ("[W]e note that metadata is inseparable from Electronic Stored Information (ESI), and, being a conjoined part of ESI documents, metadata must be disclosed along with an ESI document."); O'Neill v. City of Shoreline, 240 P.3d 1149, 1153 (Wash. 2010). Similarly, the Kansas Supreme Court held in 2023 that a public hospital was required to produce electronic records in their native format:

The parties agree Hospital is a public agency and the records requested--at least, those that are the subject of Roe's petition for review--are public records to which Roe has access under the act. There is no question that Hospital possesses the requested electronic records and can produce them in electronic format, and Hospital does not claim any exemption preventing their disclosure. The parties' only dispute, then, centers on what KORA [i.e., the Kansas Open Records Act] means when it speaks of "copies"

As every actor here thus far has identified, KORA does not define "copies." But because courts ordinarily give plain words their commonly understood meaning, the panel [of the Court of Appeals] cited these definitions to divine the meaning of "copies":

"Black's Law Dictionary defines 'copy' as '[a]n imitation or reproduction of an original.' Black's Law Dictionary 423 (11th ed. 2019). Similarly, the Webster's dictionary defines a 'copy' as 'a thing made just like another; imitation of an original; full reproduction or transcription.' Webster's New World College Dictionary 328 (5th ed. 2014). It is apparent that the common usage and plain meaning of the term 'copies' allows for reproductions which may involve numerous formats or mediums. Employing these dictionary definitions, we are persuaded that, provided the public agency delivers an accurate reproduction of the original electronic records to the requester, KORA's requirement that a copy of the public record must be provided is satisfied." Roe, 2022 WL 414402, at *6.

We agree with the panel's underlying logic to this extent: the plain meaning of "copy" denotes duplication with essentially perfect fidelity, or what the panel called an "accurate reproduction." But to confirm the validity of the panel's application of this logic to electronic records, we must also consider the meaning of "public records," to which the term "copies" applies in K.S.A. 45-219(a). On this point, KORA clarifies that "'[p]ublic record' means any recorded information, regardless of form, characteristics or location, which is made, maintained or kept by or is in the possession of: (A) Any public agency." (Emphasis added.) K.S.A. 2020 Supp. 45-217(g)(1).

This means an agency cannot split a public record into its constituent parts: all recorded information within a record is the record, and thus must be disclosed unless specifically exempted by KORA. If a member of the public submits a KORA request for a "copy" of a non copyrighted video, for example, a copy of only the video's audio component constitutes only a part of the requested record. Put another way, the record itself includes not only the information it contains, but also the form in which the information is stored. The form itself is a secondary kind of information that is also public. KORA does not contemplate government agencies divorcing form from raw data or information. Thus, KORA obliges the agency to faithfully duplicate the public record in all its respects--"regardless of form, characteristics or location." K.S.A. 2020 Supp. 45-217(g)(1).

. . . .

While the panel correctly determined that the plain meaning of "copies" "allows for reproductions which may involve numerous formats or mediums," it missed the critical implication that any "accurate reproduction" of a public record must mirror the content of that record, unless specifically exempted. . . . The only accurate reproduction of an electronic file is a copy of the electronic file, which can easily be provided by, for example, email or thumb drive.

We thus reverse the panel's decision . . . .

Roe v. Phillips Cty. Hosp., 522 P.3d 277, 281--82 (Kan. 2023) (citation omitted). The Arizona, Pennsylvania, Washington, and Kansas decisions should be considered in our analysis of section 24A.3's definition of "record," particularly insofar as the Kansas statute contains similar language. Compare 51 O.S.Supp.2020, § 24A.3with Kan. Stat. Ann. § 45 217(g)(1) (2020) ("'Public record' means any recorded information, regardless of form, characteristics or location, that is made, maintained or kept by or is in the possession of: (A) Any public agency . . . ."). The majority's decision not to discuss these cases indicates they have no convincing response to the logic discussed therein. I find the Arizona and Kansas cases highly persuasive and would reach the same conclusion they reached, were the issue squarely presented.

¶7 Perhaps the most disappointing aspect of this case is how long it has taken for Mr. Brooke to get a response to his Open Records request. When he questioned Governor Stitt's initial response to the COVID-19 pandemic as evidenced in a tweeted selfie the Governor took with his kids, all unmasked, eating at a local restaurant, Mr. Brooke sought information that would help him know what advice the Governor was being given by health officials.

¶8 For all these reasons, I respectfully dissent.

FOOTNOTES

digital copies" of the relevant records is factually sufficient to constitute a request for documents in their electronic format or native file format. See ROA, Vol. 2, Doc. 6, Def.'s Trial Ex. 1. The Health Commissioner proffers that "Plaintiff did not ask for documents in their native file format or even use the phrase 'electronic format' until well after the lawsuit was filed," and that serves as his basis for seeking relief under section 24A.17(B)(1) of the ORA. Def.'s Pet. for Cert. 3. But I am doubtful the statute requires a member of the public to invoke magic words like "native file format" in their request, when they've been explicit enough to request "digital copies." A member of the public wouldn't be seeking records in a digital format that doesn't yet exist but will be created for purposes of production--i.e., the PDF copies produced by the Health Commissioner. Said another way, Mr. Brooke wasn't asking the State Health Department to create a new and different digital record in PDF that could then be produced to him. Rather, he was seeking the records as they already exist--i.e., the PST format or native file format. In my opinion, that should be rather intuitive. If I found myself in the district court's position on remand, I would probably deem Mr. Brooke's request for "digital copies" the functional equivalent of a request for digital records in their native file format.

See ROA, Vol. 1, Doc. 5, Bench Trial Tr. 14:19-17:4, May 12, 2021. See generally Paul LeBlanc, Oklahoma Governor Who Faced Backlash over 'Packed' Restaurant Tweet Now Declares State of Emergency, CNN, Mar. 16, 2020, https://www.cnn.com/2020/03/15/politics/oklahoma-governor-deleted-tweet-coronavirus; George Lang, Out in a Crowd During a Pandemic, Gov Stitt Is a National Embarrassment, Oklahoma City Free Press, Mar. 18, 2020, https://freepressokc.com/out-in-a-crowd-during-a-pandemic-gov-stitt-is-a-national-embarrassment/ (showing Governor Stitt's now deleted tweet).

The Oklahoma Supreme Court
2100 N. Lincoln Blvd., Suite 1
Oklahoma City, OK 73105